# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MELISSA DAVIS AND LEEVEL YARBROUGH**                               **PLAINTIFFS**

**V.**                                     **CIVIL ACTION NO. 1:08-CV-249-SA-JAD**

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT, et al.**                  **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment Regarding the Claims of Plaintiff Melissa Davis [42]. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Plaintiff Melissa Davis - a black woman - submitted an application to the Louisville Municipal School District (the District), seeking any available administrative positions. She updated the application in 2005, 2006, and 2008. In early 2006, the District required a director for the Alternative School. Harry Kemp, the Superintendent, advertised for the position. He received no applications in response to the advertisement. Therefore, Kemp recommended the District promote Penny Hill, the guidance counselor at Eiland Middle School - a white woman.

The Board approved his recommendation and hired Hill at the April, 2006, School Board meeting. The day after the Board meeting in which Hill was hired, Davis went to Kemp's office and told him she wanted to be considered for the Alternative School position. Kemp alleges - and Davis does not dispute - this was the first time he personally knew of her interest in the position.

Before Hill could assume the Alternative School position, Kemp transferred Leevel Yarbrough, co-plaintiff in this matter and then principal of Eiland Middle School, to a position at the District office. Kemp recommended the Board promote Hill - still the guidance counselor at Eiland Middle School - to principal, rather than assigning her to the Alternative School. Therefore,

Kemp did not advertise for the Eiland Middle School vacancy or conduct any interviews. The Board approved his recommendation to promote Hill to principal of Eiland Middle School. Davis alleges she spoke with Kemp prior to Hill's promotion, voicing her interest in the Eiland Middle School position.

Kemp then readvertised the vacancy at the Alternative School and subsequently received applications in response. Davis was among those considered for the job. Ken McMullan, the principal of Louisville High School - where the Alternative School would be located - interviewed three persons, including Davis. Kemp and McMullan felt that Roderick Thompson - a black man - would be best for the job because of his experience with a program for delinquent children. However, Thompson did not have an administrative certification. Therefore, Kemp changed the job title and duties to accommodate Thompson, who was hired as the coordinator of Alternative Education.

Davis filed a charge of discrimination with the EEOC on July 11, 2006, alleging that the District discriminated against her because of her race by not hiring or considering her for Director of the Alternative School or principal of Eiland Middle School and hiring a white woman instead of her. The EEOC issued a determination that there was reasonable cause to believe that Davis was discriminated against in violation of Title VII, as Davis had the required certification for the positions, but the successful white applicant did not.

In the Spring of 2008, the District required a principal for Fair Elementary School. Kemp advertised for the opening, but James Brooks, a former administrator in the District, contacted him before he received any applications. Brooks wished to be rehired within the District. Kemp decided to rehire Brooks, but he believed that Brooks's experience was best suited for a secondary education

position. Therefore, Kemp transferred Hill - then the principal of Eiland Middle School - to principal of Fair Elementary School and hired Brooks as the principal of Eiland Middle School.

Davis filed a charge of discrimination with the EEOC on June 7, 2008, alleging that the District discriminated against her because of her race by not interviewing her or hiring her for the Fair Elementary School position. On July 21, 2008, the EEOC issued Davis a notice of her right to file suit as to the Alternative School and Eiland Middle School positions, and on August 13, 2008, it issued her a notice of her right to file suit with respect to the Fair Elementary school position.

Davis alleges that the District did not hire her because of her race. She has brought discrimination claims under Title VII and 42 U.S.C. § 1981 against the District, the School Board, and Kemp - individually and in his official capacity - with respect to the failure to hire her as the director of the Alternative School, principal of Eiland Middle School, and principal of Fair Elementary School.

## II. DISCUSSION

*A.     Summary Judgment Standard*

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 Fed. Appx. 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and

3

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## B.    *Title VII*

Title VII forbids employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination by direct or circumstantial evidence. Salinas, 314 Fed. Appx. at 698; Nasti v. CIBA Specialty Chems., 492 F.3d 589, 593 (5th Cir. 2007).

Title VII claims based on circumstantial evidence are analyzed under the McDonnell Douglas burden-shifting evidentiary framework. Salinas, 314 Fed. Appx. at 698 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)); Fahim v. Marriott Hotel Servs., 551 F.3d 344, 350-51 (5th Cir. 2008). First, a plaintiff is required to establish

4

a *prima facie* case of discrimination. Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 587 (5th Cir. 1998). A plaintiff must show that she was "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Carr v. Murphy Oil USA Inc., 269 Fed. Appx. 378, 378 (5th Cir. 2008) (per curiam) (citing Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005)).

Once a plaintiff has made her *prima facie* case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Deffenbaugh-Williams, 156 F.3d at 587. The defendant's burden at this stage is merely one of production - not persuasion. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 Fed. Appx. 321, 327 (5th Cir. 2009).

Once the defendant has presented a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must present substantial evidence that each proffered reason is a pretext for discrimination. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). The plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir. 1991). "The plaintiff always has the . . . ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Warren v. City of Tupelo, 332 Fed. Appx. 176, 180 (5th Cir. 2009) (punctuation omitted) (quoting Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Davis argues that Defendants violated Title VII by 1) not hiring her as the director of the

5

Alternative School; 2) not hiring her as the principal of Eiland Middle School; and 3) not hiring her as the principal of Fair Elementary School.

   *1.     Failure to Hire as Director of the Alternative School*

Defendants first argue that Davis failed to establish a *prima facie* case of discrimination with regard to the Alternative School position. Defendants contend that since the District ultimately hired Roderick Thompson - a black man - as coordinator of the Alternative School, Davis can not establish that someone outside of her protected class was hired for the position.

Defendants do not dispute that they initially hired Hill, a white woman, as the *director* of the Alternative School. It is noteworthy that the District ultimately hired Thompson, a black man, as *coordinator* of the Alternative School - not *director* of the Alternative School. Superintendent Kemp's testimony establishes that the District changed the responsibilities of the position - in addition to the title - before it hired Thompson. Defendants have not cited any law in support of their argument that the Court should consider the events at issue as a single hiring process, rather than two separate hiring processes for what are arguably two different positions. See Reddick v. True Temper Sports, 2006 U.S. Dist. LEXIS 1463, *7 (N.D. Miss. Jan. 5, 2006) (when vacancy posting was voided and later reposted, Court considered the first and second postings as two different positions). As such, the Court shall assume, for purposes of this motion, that Davis has made her *prima facie* case with respect to the Alternative School director position.

Therefore, the burden falls upon Defendants to produce a legitimate, non-discriminatory reason for hiring Hill, rather than Davis. Defendants cite Hill's experience with counseling and secondary school education within the Louisville Municipal School District. Defendants further note Hill's scheduled completion of her administrative certification before the start of the 2006-2007

6

school year. Kemp testified that he believed Hill's experience as a guidance counselor would be beneficial for students at the Alternative School as they frequently had behavioral problems. These are legitimate, nondiscriminatory reasons. Sabzevari v. Reliable Life Ins. Co., 264 Fed. Appx. 392, 395 (5th Cir. 2008) (defendant's asserted reason for promotion decision - selection of most qualified candidate - was sufficient to shift burden to plaintiff).

Kemp also testified that he was not aware of Davis's interest in the position until after the decision had already been made to hire Hill. He had not received any applications in response to the advertisement announcing the position. At her deposition, Davis offered no testimony to dispute Defendants' allegation that Kemp was personally unaware of her interest in the position. See Blow v. City of San Antonio, 236 F.3d 293, 297 (5th Cir. 2001) (defendant's proffered explanation of Plaintiff having not applied for position was sufficient for Court to move on to pretext analysis). Therefore, the Court finds that Defendants have produced legitimate, nondiscriminatory reasons for hiring Hill rather than Davis.

Davis argues that the Defendants' reasons for hiring Hill are pretext for discrimination. Davis contends: 1) Hill was not qualified for the Alternative School position; 2) at the time the decision to hire Hill for the Alternative School position was made, there were no African-American administrators in the District; and 3) Kemp violated the District's employment procedures.

A plaintiff may rebut a defendant's legitimate, non-discriminatory reason "by providing evidence that [she] was 'clearly better qualified' than the employee selected for the position at issue." Warren, 332 Fed. Appx. at 181 (quoting Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 357 (5th Cir. 2001)). However:

> [T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of

7

such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

Id. Further, "an employer has the right to depart from published job requirements and to value certain attributes over others." Thomas v. Trico Prods. Corp., 256 Fed. Appx. 658, 662 (5th Cir. 2007); see also Warren, 332 Fed. Appx. at 182 (defendant's disregard of minimum experience level listed on job posting was not sufficient to show pretext). "Substantial weight is given to an employer's decision on necessary credentials." Fonteneaux v. Shell Oil Co., 289 Fed. Appx. 695, 697 (5th Cir. 2008).

Davis argues that she was "clearly better qualified" for the Alternative School Position than Hill was, as she purportedly held the proper certification while Hill did not. The qualifications listed in the advertisement for the position included, among other things, "a valid state certificate to practice as a school principal." However, the advertisement also allowed the substitution of "[s]uch alternatives to the . . . qualifications as the Board may find appropriate and acceptable."

It is undisputed that Hill did not have an administrator certification at the time Defendants hired her, but that she received a AAA entry level administrator certification on August 21, 2006. It is also undisputed that Davis had a AA non-practicing administrator certification at the time the Defendants hired Hill, and the only difference between a non-practicing administrative certification and an entry level administrative certification is that one must first obtain a job as an administrator before acquiring an entry level certification. Had Davis been hired, she would have had to obtain an entry level administrative certification. Therefore, neither Davis nor Hill possessed the requisite entry level administrative certification - or could have prior to obtaining employment as an administrator.

8

The qualifications listed on the job posting explicitly state that the Board may substitute alternatives for the listed qualifications. Kemp testified that he believed Hill's experience in dealing with students with behavior problems and her familiarity with the students and parents of the school district would benefit her in the position. Further, Hill already had two years of administrative experience as guidance counselor of Eiland Middle School and seven years of experience in secondary education. In contrast, the record shows that Davis had no administrative or secondary education experience. Hill acquired the requisite administrative certification by the start of the 2006-2007 school year - certification that Davis would have also had to obtain had she been hired. Based on these undisputed facts, the Court can not find that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the [P]laintiff for the job in question." Warren, 332 Fed. Appx. at 181.

Next, Davis briefly argues that the absence of any African-American principals in the District during the 2006-2007 school year is evidence of pretext. However, this sort of statistical evidence, "by itself and devoid of any context, is not sufficient to raise a fact issue as to pretext." Benson v. Family Health Ctr., Inc., 2009 U.S. App. LEXIS 17458, *10 (5th Cir. Aug. 5, 2009) (evidence that every termination for dereliction of duty in prior three years was of a female employee was not probative evidence of discriminatory intent); see also Cheatham v. Allstate Ins. Co., 465 F.3d 578, 583 (5th Cir. 2006) (evidence of shift in hiring results after filing of discrimination lawsuit was not probative of discriminatory intent). The Fifth Circuit Court of Appeals has observed that gross statistical disparities are generally not sufficient, in and of themselves, to rebut a valid, nondiscriminatory reason for an adverse employment action. EEOC v. Texas Instruments, 100 F.3d 1173, 1185 (5th Cir. 1996). Davis has not presented any other

9

evidence of discriminatory intent. Therefore, mere statistical evidence alone is not sufficient to carry her pretext burden.[1]

Finally, Davis argues that Defendants' failure to follow the District's employment policies is evidence of pretext. The District's employment policies state that when "a vacancy occurs, all applicants in the 'active' file are considered." The District's application files are updated each July, and applications are considered "active" for eighteen (18) months. Applications "received earlier than the previous calendar year are considered 'inactive,'" and the application is removed from the applicant file. Plaintiff alleges that she updated her application in both 2005 and 2006. Therefore, according to the District's employment policies, her application was considered active and should, therefore, have been considered for any vacancy. Kemp testified that his normal procedure was to check the applications on file to see if anyone suitable for an advertised position had submitted an application. He could not recall checking the applications on file prior to recommending Hill for the Alternative School position.

"An employer's 'disregard of its own hiring system does not prove racial discrimination absent a showing that discrimination was a motive in the action taken." Warren, 332 Fed. Appx. at 181; see also Risher v. Aldridge, 889 F.2d 592, 594-95 (5th Cir. 1989) (government defendant's failure to consider written performance appraisals as required by personnel manual and applicable law was not evidence of pretext because no evidence presented that it did so in a discriminatory manner). Davis has offered no evidence that the District's failure to consider her application on file for the Alternative School position was the result of racial discrimination, and, therefore, she has not

---

[1] To the extent Plaintiff Davis has argued a "pattern or practice" claim premised upon these same statistical allegations, it is meritless pursuant to Celestine, 266 F.3d at 356. See also Vrzalik v. Potter, 316 Fed. Appx. 361, 362 (5th Cir. 2009) (per curiam).

carried her pretext burden.

For the above stated reasons, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff Davis's Title VII claim stemming from Defendants' failure to hire her for the Alternative School position.

## 2. *Failure to Hire as Principal of Eiland Middle School*

Defendants first argue that Davis has not made out a *prima facie* case as to the failure to hire her as the principal of Eiland Middle School as she was not rejected for the position. Defendants reason that since Kemp decided to promote from within the district - neither soliciting nor receiving applications - Davis was never considered for or denied the position. Davis responds that her application was on file and Kemp knew of her interest in any administrative positions in the District. The Court will not resolve this issue, as the parties have not adequately briefed it. Rather, the Court will assume, without deciding, that Davis has made her *prima facie* case.

Defendants offer the same reasons for promoting Hill to principal of Eiland Middle School that they did for hiring her for the Alternative School position. Her experience as guidance counselor at Eiland Middle School provided her with knowledge of the school, students, and parents. Further, Kemp believed that promoting Hill to principal at Eiland would maintain a level of stability in the school. Finally, Defendants cite Hill's qualifications. These are legitimate, nondiscriminatory reasons for promoting Hill rather than hiring Davis. Sabzevari, 264 Fed. Appx. at 395 (defendant's asserted reason for promotion decision - selection of most qualified candidate - was sufficient to shift burden to plaintiff); Franklin v. Boeing Co., 232 Fed. Appx. 408, 410 (5th Cir. 2007) (defendant's assessment of applicants' relevant experience was a legitimate, nondiscriminatory reason for hiring decision).

11

Davis argues that Defendants' stated reasons for hiring Hill are pretext for discrimination. She offers the same arguments and evidence that she did with respect to the Alternative School position. For the same reasons stated above, the Court finds that Davis has not carried her pretext burden. Therefore, the Court grants Defendants' Motion for Summary Judgment as to Davis's Title VII claim stemming from Defendants' failure to hire her as principal of Eiland Middle School.

### 3. *Failure to Hire as Principal of Fair Elementary School*

Defendants argue that Davis failed to make her *prima facie* case with respect to the Fair Elementary School position. Defendants contend that no applications were received and, therefore, Davis was never rejected. Davis responds that her application was on file, and that she specifically submitted an application for the Fair Elementary position. Again, as the parties have not adequately briefed this issue, the Court will assume, without deciding, that Davis has met her *prima facie* burden.

Defendant offers the same legitimate, nondiscriminatory reasons for deciding to transfer Hill to Fair Elementary, rather than hiring Davis as the principal of Fair Elementary: her experience and qualifications. As held above, these are legitimate, nondiscriminatory reasons. Further, Defendant states that 1) it decided to hire Brooks because of his experience as an administrator in the District; and 2) they decided to place Brooks at Eiland Middle School, rather than Fair Elementary, because Brooks's qualifications better suited him for secondary school. For the same reasons stated above, these are legitimate nondiscriminatory reasons.

Davis argues that Defendants' stated reasons for hiring Hill are pretext for discrimination. She first offers the same arguments and evidence that she did with respect to the Alternative School position and the Eiland Middle School position. For the same reasons stated above, the Court finds

12

that Davis has not carried her pretext burden with those arguments. Davis additionally argues that Defendants' rejection of her for the two previous positions is also evidence of pretext. As the Court has found that Plaintiff has presented no evidence of pretext with respect to the previous two positions, the Court finds that the District's rejection of Davis for those two positions is not evidence of pretext with respect to the Fair Elementary School position. Therefore, the Court grants Defendants' Motion for Summary Judgment as to Davis's Title VII claim stemming from the failure to hire her as principal of Fair Elementary School.

C.      *Section 1981*

Section 1981 prohibits racial discrimination in both public and private employment. Mitchell v. Crescent River Port Pilots Ass'n, 265 Fed. Appx. 363, 368-69 (5th Cir. 2008). However, Section 1981 "does not afford a remedy for violation of rights guaranteed thereunder when such claim is pursued against a governmental entity." Washington v. City of Gulfport, 2009 U.S. App. LEXIS 23991, *5-*6 (5th Cir. Nov. 2, 2009) (citing Oden v. Oktibbeha County, Miss., 246 F.3d 458, 463 (5th Cir. 2001)). Section 1981's "prohibitions against a private actor's racial discrimination are properly asserted against a state actor under 42 U.S.C. § 1983." King v. Louisiana, 294 Fed. Appx. 77, 82 n. 4 (5th Cir. 2008) (per curiam); see also Meyers v. La Porte Indep. Sch. Dist., 277 Fed. Appx. 333, 335 (5th Cir. 2007).

Plaintiffs' Amended Complaint [26] contains no reference to 42 U.S.C. § 1983. "[R]equiring § 1981 claims to be pursued through § 1983 is not a mere pleading formality." Felton v. Polles, 315 F.3d 470, 482 (5th Cir. 2002). "The express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the *exclusive* federal damages remedy for the violation of the rights guaranteed by § 1981 *when the claim is*

*pressed against a state actor.*'" Id. at 481. Therefore, as Plaintiff Davis has failed to invoke the only remedy available to her for the claimed deprivation of her Section 1981 rights by the District, the Board, and Kemp in his official capacity, she has failed to state a claim. Id. at 482; see also Oden, 246 F.3d at 463-464 (plaintiff could not maintain an independent cause of action under Section 1981 against the state or a state employee in his official capacity). Accordingly, the Court grants Defendants' Motions for Summary Judgment as to Plaintiff Davis's Section 1981 claims against the District, the Board, and Kemp in his official capacity.

Further, "[o]nly officials should be responsible for discriminatory decisions concerning government employment contracts." Felton, 315 F.3d at 481. Although Section 1981 provides a cause of action against private actors, the Fifth Circuit Court of Appeals has held that "when a plaintiff asserts a cause of action under § 1981 for discrimination in the terms and conditions of a [state] employment contract, the proper defendant is the government employer in his official capacity." Id. (quoting Oden, 246 F.3d at 464). Kemp is a state actor for purposes of this action, as "[s]tate employment is generally sufficient to render the defendant a state actor." Id. at 482 (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 n. 18, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). Accordingly, Section 1983 provides the Plaintiff's exclusive remedy against Kemp in his individual capacity. Id. Therefore, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff Davis's Section 1981 claim against Kemp in his individual capacity.[2]

---

[2]The Court further notes that "Section 1983 and Title VII are parallel cause of action." Lauderdale v. Tex. Dep't of Crim. Justice, 512 F.3d 157, 166 (5th Cir. 2007) (citing Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996)). Accordingly, the Court analyzes Section 1983 claims for alleged violations of Section 1981 under the McDonnell Douglas framework. Lawrence v. Univ. of Tex. Med. Branch, 163 F.3d 309, 311 (5th Cir. 1999). Therefore, even if Plaintiff Davis had asserted causes of action under Section 1983, the same evidentiary framework and reasoning applied to her Title VII claims would have applied to

## III. CONCLUSION

For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment Regarding the Claims of Plaintiff Melissa Davis [42].

So ordered on this, the 11th day of January, 2010.

                                                      **/s/ Sharion Aycock**
                                                      **UNITED STATES DISTRICT JUDGE**

---

them.