# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MELISSA DAVIS AND LEEVEL YARBROUGH**                                **PLAINTIFFS**

**V.**                                                **CIVIL ACTION NO. 1:08-CV-249-SA-JAD**

**LOUISVILLE MUNICIPAL SCHOOL DISTRICT, et al.**                     **DEFENDANTS**

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment Regarding the Claims of Plaintiff Leevel Yarborough [44] and Plaintiff's Motion to Strike [50]. For the reasons stated below, Plaintiff's Motion to Strike is denied as moot, and Defendants' Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff Leevel Yarborough - a black woman - was the principal of Eiland Middle School from 2002 through 2006. Yarborough possessed a chronic condition affecting mobility, which caused her periodic absence from work. She requested an assistant principal on more than one occasion, but Harry Kemp, the Superintendent of the Louisville Municipal School District (the District), repeatedly denied her request.

In February 2006, Yarborough applied for early medical retirement, to become effective June 30, 2006. Kemp subsequently decided to transfer her to a position at the District's central office, to become effective on July 1, 2006. However, Yarborough did not apply for the position. Instead, she applied for FMLA leave on July 5, 2006, and remained on leave until her early medical retirement was approved in August, 2006.

On October 25, 2006, Yarborough filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). She charged that the District had discriminated

against her because of her race by 1) refusing to assign an assistant principal to her school; 2) paying her less than white principals; 3) demoting her to the central office position; and 4) constructively discharging her. The EEOC issued a determination on May 28, 2008, stating that there was reasonable cause to believe that the District had discriminated against Yarborough because of her race by 1) not assigning an assistant principal to her school; and 2) paying her less than white principals. On September 3, 2008, the EEOC issued Yarborough a notice of her right to sue.

Yarborough's Amended Complaint asserts causes of action under Title VII and 42 U.S.C. § 1981. Defendants filed their Motion for Summary Judgment on November 13, 2009, which the Court now addresses.

## II. MOTION TO STRIKE

Plaintiff Yarborough argues that the Court should strike the declaration from Harry Kemp attached to Defendants' reply brief as it fails to meet the requirements of Federal Rule of Civil Procedure 56(e)(1). Defendants cured the alleged deficiency by filing a sworn affidavit from Kemp. Yarborough has not objected, or otherwise replied, to Defendants' filing of the affidavit. Therefore, the Court denies Plaintiff Yarborough's Motion to Strike [50] as moot, and the Court shall consider the affidavit.

## III. MOTION FOR SUMMARY JUDGMENT

*A.     Summary Judgment Standard*

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 Fed. Appx. 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew

v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## B.  *Title VII*

Title VII forbids employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination by direct or circumstantial evidence. Salinas, 314 Fed. Appx. at 698; Nasti v. CIBA Specialty Chems., 492 F.3d 589, 593 (5th Cir. 2007).

Title VII claims based on circumstantial evidence are analyzed under the McDonnell Douglas burden-shifting evidentiary framework. Salinas, 314 Fed. Appx. at 698 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)); Fahim v. Marriott Hotel Servs., 551 F.3d 344, 350-51 (5th Cir. 2008). First, a plaintiff is required to establish a *prima facie* case of discrimination. Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 587 (5th Cir. 1998). A plaintiff must show that she was "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Carr v. Murphy Oil USA Inc., 269 Fed. Appx. 378, 378 (5th Cir. 2008) (per curiam) (citing Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005)).

Once a plaintiff has made her *prima facie* case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Deffenbaugh-Williams, 156 F.3d at 587. The defendant's burden at this stage is merely one of production - not persuasion. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 Fed. Appx. 321, 327 (5th Cir. 2009).

Once the defendant has presented a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must present substantial evidence that each proffered reason is a pretext for discrimination. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). The plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Little v. Republic Refining Co., 924 F.2d 93, 96 (5th Cir. 1991). "The plaintiff always has the . . . ultimate burden of persuading the trier of fact that the defendant

4

intentionally discriminated against the plaintiff." Warren v. City of Tupelo, 332 Fed. Appx. 176, 180 (5th Cir. 2009) (punctuation omitted) (quoting Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Liberally construing Plaintiff Yarborough's factual allegations, the Court discerns four causes of action. She claims that Defendants discriminated against her by 1) failing to assign an assistant principal to her; 2) transferring her to the Central Office position; 3) paying her less than similarly situated white principals; and 4) constructively discharging her.[1]

### 1.  *Failure to Assign an Assistant Principal*

In Title VII discrimination claims, the Fifth Circuit Court of Appeals has "consistently limited 'adverse employment action' . . . to acts which effect compensation, duties, and benefits." McKay v. Johanns, 265 Fed. Appx. 267, 268-69 (5th Cir. 2008) (citing Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004)); see also Roberson v. Game Stop, 152 Fed. Appx. 356, 360 (5th Cir. 2005); McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007) (Burlington Northern standard expanding "adverse employment action" to actions affecting the terms and conditions of employment was expressly limited to Title VII retaliation claims). "[A]dverse employment decisions are ultimate employment decisions, not the day-to-day decisions made in the context of the employment relationship." Roberson, 152 Fed. Appx. at 361. Plaintiff Yarborough does not allege that Defendants' failure to assign an assistant principal to Eiland Middle School was "a

---

[1] To the extent Yarborough has argued a "pattern and practice" claim, such a claim is meritless. The "pattern and practice" method of proof is unavailable to an individual plaintiff asserting claims under Title VII. Celestine v. Petroleos de Venez, SA, 266 F.3d 343, 356 (5th Cir. 2001). The appropriate method of proof at the summary judgment stage in an action such as this one - in which each Plaintiff has asserted her own individual Title VII claims - is the McDonnell Douglas framework. Id.; Vrzalik v. Potter, 316 Fed. Appx. 361, 362 (5th Cir. 2009) (per curiam).

5

decision about benefits, compensation, or employment." Id. She merely claims that it bore on her later decision to retire.

Therefore, as she has not made an "objective showing of a loss in compensation, duties, or benefits," Yarborough has failed to establish a *prima facie* case with respect to a Title VII discrimination claim premised solely on Defendants' failure to assign an assistant principal to Eiland Middle School. Watkins v. Paulsen, 332 Fed. Appx. 958, 960 (5th Cir. 2009). Accordingly, the Court grants Defendants' Motion for Summary Judgment as to any such claim.[2]

  *2. Transfer to Central Office Position*

Defendants argue that the transfer to the central office position was not an adverse employment action, while Plaintiff Yarborough contends that it was the equivalent of a demotion. A transfer may rise to the level of an adverse employment action if it is the equivalent of a demotion in form or substance. Sabzevari v. The Reliable Life Ins. Co., 264 Fed. Appx. 392, 396 (5th Cir. 2008). "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse - such as being less prestigious or less interesting or providing less room for advancement." Alvarado v. Texas Rangers,

---

[2]Even if Defendants' failure to assign an assistant principal to Eiland Middle School constituted an adverse employment action for purposes of a Title VII discrimination claim, Defendants have produced a legitimate, nondiscriminatory reason for not assigning an assistant principal. Defendants have filed affidavits from Kemp, in which he claims that Eiland Middle School had the smallest enrollment in the District, and that there were two other schools in the District that did not have assistant principals, both of which had white principals.

Plaintiff Yarborough points to Defendants' hire of an assistant principal - Jawana Young - after she tendered her resignation as evidence of pretext. However, Kemp has testified, by way of affidavit, that Defendants hired Young in case the principal of Louisville Elementary School resigned during the school year. Louisville Elementary School shares a campus with Eiland Middle School, and Louisville Elementary's size did not merit a full-time assistant principal. As such, Kemp recommended that Young split time between the two schools. Plaintiff Yarborough has not denied these factual allegations, nor has she presented any additional evidence of pretext.

492 F.3d 605, 613 (5th Cir. 2007); see also Pegram, 361 F.2d at 283.  "[W]hether a transfer could be viewed as the objective equivalent of a [demotion] depends upon the totality of the circumstances in the particular case."  Alvarado, 492 F.3d at 614 n. 8.

"[A] plaintiff's subjective perception that a demotion has occurred is not enough."  Alvarado, 361 F.2d at 614 (quoting Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996)).  Likewise, a plaintiff's subjective preference for one position over another is not, by itself, a sufficient basis for finding an adverse employment action has taken place.  Roberson, 152 Fed. Appx. at 360; Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771 n. 8 (5th Cir. 2001).  The inquiry is an objective one.  Id. at 614-14 (citing Pegram, 361 F.3d at 283); see also Sabzevari, 264 Fed. Appx. at 396.

Construing the facts in the light most favorable to Plaintiff Yarborough, the Court finds that the transfer was the equivalent of a demotion and that she has established her *prima facie* case.  There is no dispute that the transfer would have entailed a significant change in responsibilities.  Alvarado, 492 F.3d at 614 (job may be objectively better if it provides greater responsibility or better duties).  Yarborough has described the job as a "food service" position, and she alleged that the required training for the position involved "converting recipes."  Kemp's testimony verifies that she would have supervised the District's nutritional programs.  Further, Yarborough alleged that the person who previously filled the position did not have a college degree, and that none of the other persons attending the required training had college degrees.  Finally, Yarborough argues that the position would have been less prestigious than her position as principal of Eiland Middle School.

Defendants argue, and Yarborough does not dispute, that the position did not entail a change in salary or benefits, and that it came with the additional perk of an assistant.  This fact is not dispositive, though.  Id.  Defendants also allege that the position was newly created, but Yarborough

7

testified that when she initially balked at the prospect of transfer, Defendants merely changed the title of the position. Additionally, Defendants argue that the District was required to fill the position in order to receive state funding, but that fact has little bearing on whether the transfer was equivalent to a demotion. Defendants further argue that the position required state certification, but the Court finds this fact unpersuasive in light of Yarborough's testimony that a college degree was not required for the position. Id. at 614 (a position may be objectively better if it requires "greater skill, education, or experience").

While the central office position did not entail a reduction in salary or benefits and, in fact, included the additional perk of an assistant, the evidence in the record shows that it entailed a significant change in responsibilities and that Yarborough's credentials outstripped the minimum requirements for the position. Plaintiff Yarborough's subjective opinion that the job was less prestigious is of little value to the Court's determination in this matter, but she has presented enough evidence to establish, for purposes of establishing her *prima facie* case, that the job was the objective equivalent of a demotion.

However, Defendants have produced a legitimate, nondiscriminatory reason for Yarborough's transfer to the central office position. They have presented testimony from Kemp and a member of the School Board stating that the transfer was made to avoid the potential disruption of a mid-year change in the principal's position that would have been caused by Yarborough's pending medical retirement. This is a legitimate, nondiscriminatory reason. See Baker v. Fedex Ground Package Sys., 278 Fed. Appx. 322, 327 (5th Cir. 2008) (concern for lost productivity was a legitimate, nondiscriminatory reason for a transfer).

Yarborough contends that Defendants' stated reason for the transfer is mere pretext for racial

discrimination. First, she points to several comments made to her in the workplace. She alleges that in 2006 Kemp stated, "They asked me to join the Ku Klux Klan." Yarborough does not recall the context of the statement or the date on which Kemp allegedly made it. Second, she alleges that after she had hired six black people, Kemp asked her, "Did you check their references real good? Because we have to hire good black people." She claims that Kemp never made a similar statement when she hired white people, but she does not recall the date on which Kemp made the comment. Third, she alleges that when she told Kemp that the school would lose its accreditation if he did not assign her an assistant principal he replied, "I guess we'll just lose it under you then." However, she does not recall the date of this exchange. Finally, she alleges that a coworker commented on her transfer, telling her to make sure to have hot coffee and hot rolls available on cold days.

For comments in the workplace to provide sufficient evidence of discrimination, they must be "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the [adverse employment action]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Auguster v. Vermillion Parish Sch. Bd., 249 F.3d 400, 404-05 (5th Cir. 2001); see also Gillaspy v. Dallas Indep. Sch. Dist., 278 Fed. Appx. 307, 313 (5th Cir. 2008).[3]

Yarborough has failed to provide evidence that either the first comment (referencing the Ku Klux Klan) or the second comment (referencing "good black people") was proximate in time or

---

[3]The Fifth Circuit Court of Appeals has held, however, that the four-pronged "stray remarks" analysis does not apply in cases where the plaintiff has produced other "substantial evidence" of pretext. Auguster, 249 F.3d at 404 (citing Rubinstein v. Adm'rs of Tulane Ed. Fund, 218 F.3d 392, 400-01 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1393 (2001)). Yarborough has not provided other "substantial evidence" of pretext with respect to the transfer, as shown by the Court's analysis below.

9

related to the decision to transfer her. She has also failed to provide evidence that the third comment (referencing loss of accreditation) was related to the protected class of which she is a member, proximate in time to the decision to transfer her, or related to the decision to transfer her. Finally, Yarborough has failed to provide evidence that the final comment (hot coffee and hot rolls) was related to the protected class of which she is a member or that it was made by an individual with authority over the decision to transfer her.[4] Therefore, the alleged comments do not provide sufficient evidence of discrimination to satisfy her pretext burden.

Yarborough also argues that the EEOC determination of May 28, 2008, provides evidence of pretext. The EEOC determination stated that there was reasonable cause to believe that Yarborough was denied an assistant principal because of her race, as both her predecessor and as her successor had an assistant principal. It also stated that there was reasonable cause to believe that she was paid disparately based on her race, as she was the lowest paid administrator in the District despite having superior qualifications. It further asserted that the District's articulated reasons for the alleged differences in treatment were not supported by the evidence. However, the determination did not go into any greater detail as to the evidence upon which it was based or as to what the District's articulated reasons for the allegedly discriminatory treatment were.

An EEOC determination may be probative of discriminatory intent. Bugos v. Ricoh, Corp., 2008 U.S. App. LEXIS 18311, *14 (5th Cir. Aug. 21, 2008). However, it is not dispositive. Price v. Fed. Express Corp., 283 F.3d 715, 725 (5th Cir. 2002). The determination letter at issue "contains

---

[4] In order to meet the third prong of the analysis, Yarborough must only establish that the speaker "exercised influence or leverage" over the decision-maker, in order to impute the speaker's alleged animus to the decision-maker. Gillaspy, 278 Fed. Appx. at 313. She has provided no such evidence.

only the broadest legal and factual conclusions," does not specify the particular evidence upon which the determination was made, does not specify the District's articulated reasons for their actions, and does not "outline the nature of the investigation conducted." Wright v. Columbia Women & Children's Hosp., 2002 U.S. App. LEXIS 28197, *11-*12 (5th Cir. Mar. 8, 2002). "Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997). Further, the Court, in this opinion, addresses the issues which form the basis of the EEOC determination, and finds Yarborough's claims to be without merit. Therefore, the determination letter is insufficient to carry Yarborough's pretext burden. See Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005) (EEOC determination was not sufficient to meet plaintiff's pretext burden when plaintiff failed to rebut defendant's legitimate reason for the adverse employment action).

Finally, Yarborough alleges that she was the only black principal in the District from 2002-2006, and that there was no black principal employed or recommended for employment during the school year after Yarborough retired. However, this sort of statistical evidence, "by itself and devoid of any context, is not sufficient to raise a fact issue as to pretext." Benson v. Family Health Ctr., Inc., 2009 U.S. App. LEXIS 17458, *10 (5th Cir. Aug. 5, 2009) (evidence that every termination for dereliction of duty in prior three years was of a female employee was not probative evidence of discriminatory intent); see also Cheatham v. Allstate Ins. Co., 465 F.3d 578, 583 (5th Cir. 2006) (evidence of shift in hiring results after filing of discrimination lawsuit was not probative of discriminatory intent). The Fifth Circuit Court of Appeals has observed that gross statistical disparities are generally not sufficient, in and of themselves, to rebut a valid, nondiscriminatory

11

reason for an adverse employment action. EEOC v. Texas Instruments, 100 F.3d 1173, 1185 (5th Cir. 1996). Yarborough has not presented any other evidence of discriminatory intent. Therefore, mere statistical evidence is not sufficient to carry her pretext burden.

For the reasons stated above, the Court grants Defendants' Motion for Summary Judgment with respect to any Title VII claim asserted by Yarborough based solely on the transfer.[5]

### 3. Pay Disparity

Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). "To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that [she] was a member of a protected class and that [she] was paid less than a non-member for work requiring substantially the same responsibility." Taylor v. UPS, Inc., 554 F.3d 510, 522 (5th Cir. 2008) (citing Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984)); see also Johnson v. TCB Const. Co., Inc., 334 Fed. Appx. 666, 670 (5th Cir. 2009). The same analysis applies even if the two employees whose salaries are being compared were employed at different times in the same position. Uviedo, 738 F.2d at 1431. A plaintiff may not rely on general statistical evidence; rather, she must present evidence that her pay was lower than specific employees who are not members of the protected class. Taylor, 554 F.3d at 523. The comparison must be to a "person who is or was similarly situated." Jones v. Flagship Int'l, 793 F.2d 714, 723 (5th Cir. 1986).

If a plaintiff establishes a *prima facie* case of wage discrimination under Title VII, the

---

[5]Plaintiff additionally argues that the alleged adverse employment actions which form the basis of her other Title VII claims also provide evidence of pretext. The Court rejects such an argument, insofar as it finds her other Title VII claims to be without merit.

employer can respond with evidence that the disparate wage payments were "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than [race]." Plemer v. Parsons Gilbane, 713 F.2d 1127, 1136 (5th Cir. 1983); see also Browning v. Southwest Research Inst., 288 Fed. Appx. 170, 174 (5th Cir. 2008). "Factors other than [race] include, among other things, employees' different job levels, different skill levels, previous training, and experience." Browning, 288 Fed. Appx. at 174 (quotation omitted). If the employer provides legitimate, non-discriminatory reasons for the alleged pay disparity, the plaintiff must show that the purported reason is a pretext for discrimination. Id. (citing Plemer, 713 F.2d at 1137 n. 8).

Yarborough alleges that white principals received higher salaries than she did. Specifically, she compares her salary to those of her predecessor, Tommie Joe Wylie, and her successor, Penny Hill.

      **a.**      **Wylie**

Yarborough alleges that her predecessor, Tommie Joe Wylie, was paid $4,649.75 each month during the 2001-2002 school year, while she was only paid $4,291.67 each month during the 2002-2003 school year. However, Kemp testified - and Yarborough does not dispute - that by the 2001-2002 school year Wylie had been the principal of Eiland Middle School for approximately thirty years and had received raises over time, whereas the 2002-2003 school year was Yarborough's first year as principal.

Defendant contends that Yarborough has not made her *prima facie* pay disparity case with respect to her comparison with Wylie, insofar as a comparison of the *final four years* of Wylie's tenure as principal to Yarborough's *first four years* as principal, reveals that Yarborough was

13

actually paid a higher average salary than Wylie was paid.⁶ Yarborough received $5,111.44 each month of her *fourth year* as principal, while Wylie received $4,649.75 each month in the *final year of a thirty-year tenure* as principal. Defendants argue that there was, therefore, no disparity.

To establish her *prima facie* case, Yarborough must only establish that she is a member of a protected class and that a non-member was paid more for the same work. Johnson, 334 Fed. Appx. at 670. She is permitted to compare her salary to that of an employee from a different period of time. Uviedo, 738 F.2d at 1431. Defendant does not dispute that Wylie was not a member of Yarborough's protected class and that he was paid more in the final year of his employment than Yarborough was paid in the first year of hers. Therefore, the Court finds that Yarborough has established her *prima facie* case, and it shall move on to the second phase of the McDonnell Douglas framework.

An employer may rebut a *prima facie* pay disparity case with evidence that the disparity was pursuant to "a differential based on any other factor other than [race]." Browning, 288 Fed. Appx. at 174. Defendant has offered a legitimate, nondiscriminatory reason for the pay disparity: Wylie's thirty years of experience in the District. Id. (greater experience is a legitimate reason for pay disparity); Phillips v. TXU Corp., 194 Fed. Appx. 221, 225-26 (5th Cir. 2006) (experience was legitimate reason for higher pay range); Memberu v. Allright Parking Sys., 93 Fed. Appx. 603, 607-08 (5th Cir. 2004) (twelve years of experience legitimately resulted in merit raises and higher value to employer); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1049 (5th Cir. 1996) (experience was

---

⁶The undisputed evidence in the record shows that during Wylie's last four years as principal of Eiland Middle School, his mean monthly salary was $4,462.40 each month. In contrast, during Yarborough's first four years as principal of Eiland Middle School, her mean monthly salary was $4,693.60.

14

legitimate reason for pay disparity).

Yarborough argues that the District's purported reason for the pay disparity is mere pretext for racial discrimination. First, she notes that Kemp testified that the District had no set pay scale based on seniority or education. This, however, is not fatal to the District's defense. Wiley v. Am. Elec. Power Serv. Corp., 287 Fed. Appx. 335, 342 (5th Cir. 2008) (defendant's criteria based on factor other than protected characteristic was not required to be in writing). Second, she alleged in her deposition that she had a higher degree than Wylie. However, that allegation is irrelevant, insofar as Defendants have cited Wylie's tenure as the driving factor in the alleged wage gap. Memberu, 93 Fed. Appx. at 608. Therefore, Yarborough has not rebutted Defendants' assertion that Wylie's "length of service as a [principal] explains the differential, nor does [she] offer any other evidence that a discriminatory purpose drove the wage gap between" herself and Wylie. Id. This failure is fatal to her Title VII claim based upon the alleged disparity between her salary and Wylie's salary.

### b. Hill

Yarborough also asserts that her successor, Penny Hill, was paid the same salary in her first year as Yarborough was paid in her fourth year. Defendant argues that Yarborough has, therefore, failed to make her *prima facie* case, insofar as a plaintiff must prove that she was paid *less* than a non-member for work requiring substantially the same responsibility. Taylor, 554 F.3d at 522.

A plaintiff may establish her *prima facie* case by comparing her salary to that of her successor. Plemer, 713 F.2d at 1137. However, as Yarborough admits that her final salary was not less than Hill's starting salary, she has not met her *prima facie* burden with respect to any comparison of her pay to Hill's. Plemer, 713 F.2d at 1131 (court compared plaintiff's final salary

15

to successor's starting salary).[7]

Therefore, the Court grants Defendants' Motion for Summary Judgment as to any Title VII pay disparity claim asserted by Yarborough.

*4. Constructive Discharge*

Yarborough claims that she was constructively discharged from her employment with the District. Constructive discharge is "actionable under Title VII as a 'tangible employment action.'" Donaldson v. CDB, Inc., 335 Fed. Appx. 494, 500 (5th Cir. 2009) (quoting Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405,. 410 n. 15 (5th Cir. 2002)). To establish constructive discharge, a plaintiff must show that "the working conditions were so intolerable that a reasonable employee would feel compelled to resign." Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div., 512 F.3d 157, 167 (5th Cir. 2007) (citation omitted). Factors in concluding whether an employee was constructively discharged include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

Id. (quoting Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000)) (alteration in original). Yarborough's resignation "must have been reasonable under all the circumstances." Brown, 207

---

[7]The Court is aware that Hill's first-year salary was greater than Yarborough's first-year salary. However, Plaintiff has not cited any law supporting her implicit argument that the Court should compare Yarborough's *first-year* salary, rather than her *fourth-year* salary, to the first-year salary of her successor. At the time Defendants hired Yarborough and set her first-year salary, they could not have known that they would be hiring Hill in four years nor that they would be tasked with setting a first-year salary for her. Therefore, Hill's first-year salary can not logically be evidence that discrimination motivated Defendants' decisions as to Yarborough's first-year salary, insofar as the alleged discriminatory act - paying Yarborough - occurred four years earlier.

16

F.3d at 782 (quoting Barrow v. New Orleans Steamship Ass'n, 10 F.3d 292, 297 (5th Cir. 1994)). The determination is an objective one, and "constructive discharge cannot be based upon the employee's subjective preferences for one position over another." McGarry v. Univ. of Miss. Med. Ctr., 2009 U.S. App. LEXIS 27349, *14 (5th Cir. Dec. 14, 2009) (citing Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 755 (5th Cir. 1986)).

Yarborough cites many different reasons to support her claim that she was effectively forced into retirement. First, she references the alleged pay disparity the Court has already addressed. Second, she cites the fact that Defendants did not assign an assistant principal to Eiland Middle School. Third, she argues that her transfer to the central office position contributed to the allegedly intolerable working conditions. Fourth, she points to the workplace comments the Court has already addressed. Finally, she claims that Kemp encouraged her to take early retirement and repeatedly asked her if her application had been approved.

The Court shall assume, without deciding, that a reasonable employee would have felt compelled to resign under the circumstances Yarborough describes. As the Court has discussed above, Defendants have offered legitimate, nondiscriminatory explanations for the alleged pay disparity, the failure to assign an assistant principal to Eiland Middle School during Yarborough's tenure as principal, and the transfer of Yarborough to the central office position. Yarborough has failed to offer evidence that these explanations are pretext for discrimination. Further, the alleged workplace comments are not sufficient to prove pretext, as the Court previously discussed.

Yarborough has not alleged any specific facts to rebut the Defendants' nondiscriminatory rationale for the actions which form the basis of her constructive discharge claim. Further, she has not presented any evidence of discriminatory intent. Therefore, even if a reasonable employee

17

would have felt compelled to retire under the circumstances of this case, Yarborough has not carried her burden. King v. Louisiana, 294 Fed. Appx. 77, 85 (5th Cir. 2008) (where plaintiff failed to rebut defendants' nondiscriminatory reason for each act that formed the basis of a constructive discharge, summary judgment was appropriate); Peace v. Harvey, 207 Fed. Appx. 366, 369 (5th Cir. 2006) (where plaintiff failed to rebut defendant's legitimate reasons for alleged actions that formed the basis of a constructive discharge, summary judgment was appropriate); Prejean v. Radiology Assocs. of Southwest La., Inc., 2009 U.S. App. LEXIS 19363, *11-*14 (5th Cir. Aug. 27, 2009) (where plaintiff failed to present evidence to rebut employer's legitimate reasons for actions that constituted a constructive discharge, summary judgment was appropriate). As such, the Court grants Defendants' Motion for Summary Judgment with respect to any constructive discharge claim asserted by Yarborough.

*C.     Section 1981*

Section 1981 prohibits racial discrimination in both public and private employment. Mitchell v. Crescent River Port Pilots Ass'n, 265 Fed. Appx. 363, 368-69 (5th Cir. 2008). However, Section 1981 "does not afford a remedy for violation of rights guaranteed thereunder when such claim is pursued against a governmental entity." Washington v. City of Gulfport, 2009 U.S. App. LEXIS 23991, *5-*6 (5th Cir. Nov. 2, 2009) (citing Oden v. Oktibbeha County, Miss., 246 F.3d 458, 463 (5th Cir. 2001)). Section 1981's "prohibitions against a private actor's racial discrimination are properly asserted against a state actor under 42 U.S.C. § 1983." King, 294 Fed. Appx. at 82 n. 4; see also Meyers v. La Porte Indep. Sch. Dist., 277 Fed. Appx. 333, 335 (5th Cir. 2007).

Plaintiffs' Amended Complaint [26] contains no reference to 42 U.S.C. § 1983. "[R]equiring § 1981 claims to be pursued through § 1983 is not a mere pleading formality." Felton v. Polles, 315

18

F.3d 470, 482 (5th Cir. 2002). "The express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the *exclusive* federal damages remedy for the violation of the rights guaranteed by § 1981 *when the claim is pressed against a state actor*." Id. at 481. Therefore, as Yarborough has failed to invoke the only remedy available to her for the claimed deprivation of her Section 1981 rights by the District, the Board, and Kemp in his official capacity, she has failed to state a claim. Id. at 482; see also Oden, 246 F.3d at 463-464 (plaintiff could not maintain an independent cause of action under Section 1981 against the state or a state employee in his official capacity). Accordingly, the Court grants Defendants' Motions for Summary Judgment as to Yarborough's Section 1981 claims against the District, the Board, and Kemp in his official capacity.

Further, "[o]nly officials should be responsible for discriminatory decisions concerning government employment contracts." Felton, 315 F.3d at 481. Although Section 1981 provides a cause of action against private actors, the Fifth Circuit Court of Appeals has held that "when a plaintiff asserts a cause of action under § 1981 for discrimination in the terms and conditions of a [state] employment contract, the proper defendant is the government employer in his official capacity." Id. (quoting Oden, 246 F.3d at 464). Kemp is a state actor for purposes of this action, as "[s]tate employment is generally sufficient to render the defendant a state actor." Id. at 482 (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 n. 18, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). Accordingly, Section 1983 provides Yarborough's exclusive remedy against Kemp in his individual capacity. Id. Therefore, the Court grants Defendants' Motion for Summary

Judgment as to her Section 1981 claim against Kemp in his individual capacity.[8]

## IV. CONCLUSION

For the reasons stated above, the Court denies as moot Plaintiff Yarborough's Motion to Strike [50] and grants Defendants' Motion for Summary Judgment Regarding the Claims of Plaintiff Leevel Yarborough [44].

So ordered on this, the 15th day of January, 2010.

                                                            **/s/ Sharion Aycock**
                                                            **UNITED STATES DISTRICT JUDGE**

---

[8]The Court further notes that "Section 1983 and Title VII are parallel cause of action." Lauderdale, 512 F.3d at 166 (citing Cervantez v. Bexar County Civil Serv. Comm'n, 99 F.3d 730, 734 (5th Cir. 1996)). Accordingly, the Court analyzes Section 1983 claims for alleged violations of Section 1981 under the McDonnell Douglas framework. Lawrence v. Univ. of Tex. Med. Branch, 163 F.3d 309, 311 (5th Cir. 1999). Therefore, even if Yarborough had asserted causes of action under Section 1983, the same evidentiary framework and reasoning applied to her Title VII claims would have applied to them.